**IT IS ORDERED as set forth below:**

**Date: August 7, 2024**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| IN RE: | CASE NO. 23-61014-JWC |
|---|---|
| LYNN JON ROBERTSON, SR., | CHAPTER 13 |
| Debtor. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case represents the seventh bankruptcy case filed in eleven years by Lynn Jon Robertson, Sr. ("Debtor"). During those eleven years, Debtor made only three payments to U.S. Bank National Association[1] (hereinafter "U.S. Bank"), the creditor holding a lien on his primary residence (hereinafter the "Secured Claim"). In his first

---

[1] U.S. Bank National Association appears solely in its capacity as Trustee for certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2006-AC4, by Select Portfolio Servicing, Inc.

case filed in 2012, Debtor's proposed plan estimated the prepetition arrearage on the Secured Claim at more than $48,000, and it only grew from there.

By the time Debtor first retained Stan Kakol ("Kakol") and the Law Offices of Stanley J. Kakol, Jr., LLC (the "Kakol Firm") to represent him in his sixth bankruptcy case filed in May of 2023—the day before a scheduled foreclosure—the arrearage had grown to more than $286,000. Remarkably, Kakol proposed a plan estimating an arrearage of only $21,000, an amount he claims to have determined based on a review of Debtor's previous cases, his credit report, and Debtor's baseless assertions, unsupported by evidence, that he owed less than the amount shown in U.S. Bank's numerous proofs of claim and filings in five previous cases. Although Kakol claims to have repeatedly admonished Debtor to provide evidence that the arrearage was less than claimed and warned Debtor that the case could not proceed without such evidence, Debtor provided no such evidence. Instead, Debtor failed to make chapter 13 plan payments as well as payments on the Secured Claim, and the Court dismissed Debtor's sixth case less than three months after it was filed.

Less than five months later, Debtor returned to Kakol a few days before yet another scheduled foreclosure. Debtor again had no evidence that the arrearage was less than any of the amounts asserted by U.S. Bank in any of the six previous cases and no evidence of any payments toward the Secured Claim since the prior case. What Debtor did have, however, was $1,037.00 to pay Kakol a fee in advance of filing,

just a little more than the $1,000.00 paid to Kakol in advance of filing the sixth case.[2] Without any evidence from Debtor as to payments on the Secured Claim, Kakol filed this case, Debtor's seventh, the day before the scheduled foreclosure. Kakol—again without any evidence in support—signed and filed a plan which estimated the prepetition arrearage at $21,000.00. During the pendency of this case, Debtor failed to appear at his 341 meeting, failed to make a single plan payment, and failed to provide any evidence to Kakol that the arrearage—which now exceeds $300,000— was ever less than the amounts asserted by U.S. Bank in numerous proofs of claim and pleadings filed in Debtor's six previous cases.

U.S. Bank and the United States Trustee both requested sanctions against Kakol for filing this case and the plan, and the Court agrees that sanctions are appropriate. The record before the Court demonstrates that Kakol either knowingly understated, or willfully ignored, the true amount of the arrearage. Kakol had no reasonable basis to believe this case could be feasible, or that the plan and the arrearage proposed in the plan had any basis in fact or reality. Kakol failed to conduct a reasonable inquiry of Debtor's previous cases and the court records of those cases, and he failed to obtain any evidence from Debtor necessary to support the positions taken in this case. In defense of his conduct, Kakol argues he was simply being "an aggressive Debtor's lawyer," and giving his client the benefit of the doubt. Aggressive lawyering, however, does not obviate an attorney's obligation to conduct an

---

[2] By way of comparison, Debtor paid a grand total of $4,762.77 in eleven years toward the Secured Claim.

appropriate pre-filing review of a debtor's affairs to establish a good faith basis for seeking relief for a serial debtor in his seventh case in eleven years. At best, Kakol's decision to file this case and plan was grossly negligent. At worst, it was a willful abuse of the bankruptcy process.

Because Kakol's representation of Debtor in this case fell drastically below the standard for acceptable representation of individual debtors in chapter 13 cases as discussed in greater detail below, he and the Kakol Firm will be sanctioned as follows: (1) they will be required to disgorge any and all fees paid in connection with his representation of Debtor in this case and pay such fees to U.S. Bank; (2) they will be ordered to reimburse U.S. Bank for all legal fees and costs incurred in this case in the amount of $5,090.00; (3) Kakol will be required to attend fifteen (15) hours of continuing legal education focused on consumer bankruptcy within the next six months in addition to any bar requirements; (4) Kakol and the Kakol Firm will be prohibited from using associate or appearance counsel without appropriate supervision to insure that such counsel is sufficiently familiar with the matter to effectively represent clients before this Court; and (5) Kakol and the Kakol Firm shall be subject to a further sanction of up to $500.00 for each instance in the future in which Kakol, attorneys for the Kakol Firm, or appearance counsel appearing on behalf of the Kakol Firm are unprepared or unable to properly handle a debtor's business before the Court.

## I.    <u>JURISDICTION</u>

The Court finds this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    <u>PROCEDURAL HISTORY</u>

Debtor filed this case on November 6, 2023. U.S. Bank filed its Motion to Dismiss Case with Prejudice and Request for Sanctions (Doc. Nos. 18, 19) (the "U.S. Bank Sanctions Motion"), requesting that Kakol disgorge all fees received for this case, that Kakol reimburse U.S. Bank for its attorneys' fees incurred in this case, and that Kakol be prohibited from using associates or appearance counsel that have not reviewed pleadings and cannot answer questions at a hearing. The United States Trustee filed its own Motion for Review and Disgorgement of Fees and Imposition of Sanctions (Doc. No. 20) (together with the U.S. Bank Sanctions Motion, the "Sanctions Motions"), also requesting that Kakol disgorge his fees and requesting further, unspecified monetary sanctions. By separate order, the Court dismissed the bankruptcy case but retained jurisdiction to rule on the Sanctions Motions (Doc. No. 29).

The Court held a hearing on the Sanctions Motions, among other matters, on March 26, 2024 (the "Final Hearing"). Prior to the Final Hearing, Kakol filed a response (Doc. No. 24) and the Unsworn Declaration under Penalty of Perjury of his paralegal, Jazman Austin (Doc. No. 25). Counsel for the United States Trustee,

5

counsel for the Chapter 13 Trustee, counsel for U.S. Bank, and Kakol appeared at the Final Hearing. The Court heard arguments from counsel and took the matters under advisement at the conclusion of the Final Hearing. At the Court's direction, counsel for U.S. Bank filed an Application for Compensation (the "Application") detailing the attorney's fees requested in its sanctions motion in the total amount of $5,090.00 (Doc. No. 26). Kakol filed an untimely response to the Application (Doc. No. 28) in which he indicated no opposition to the requested compensation of $5,090.00 but asked that the Court provide him with the ability to pay in monthly installments of $500.00, free of interest. *Id.*

Based on the evidence presented at the Final Hearing and the Court's review of the record in this case and the Debtor's prior cases, the Court makes the following findings of fact and conclusions of law:

## III.  <u>FINDINGS OF FACT</u>

Debtor, Lynn Jon Robertson, Sr., is not new to the bankruptcy court nor is his counsel.[3] Debtor has been in and out of bankruptcy since 2012, filing six unsuccessful prior cases.[4] During that same span of time, Debtor made only three payments on the

---

[3] This is not the first time Kakol has been sanctioned for his conduct in representation of chapter 13 debtors. The Honorable James R. Sacca recently issued a 90-page opinion condemning Kakol for his conduct in representing chapter 13 debtors. *See In re James Day*, Docket No. 55, No. 23-52197-jrs (Bankr. N.D. Ga. Apr. 5, 2024).

[4] The Court takes judicial notice of all of Debtor's bankruptcy cases pursuant to Federal Rule of Evidence 201(e), including but not limited to, the documents filed in this case and all prior bankruptcy cases. *See In re Sacco Local Development Corp.*, 30 B.R. 862, 865 (Bankr. D. Me. 1983).

Secured Claim but managed to delay foreclosure of his home through multiple filings over eleven years, including the filing of the current case.

### A. The Secured Claim

The Secured Claim of U.S. Bank arises from a promissory note signed by Debtor in 2006 in the original principal amount of $195,200.00 and secured by his primary residence at 4383 Post Road, Winston, Georgia 30187 (the "Property"). Debtor scheduled the Secured Claim in the current case in the amount of $417,057.28. Debtor did not schedule the Secured Claim as disputed, contingent, or unliquidated. U.S. Bank filed a proof of claim (Claim 6-1) asserting a total amount owed of $428,430.79 and a prepetition arrearage of $300,043.53. The proof of claim includes a detailed payment history, indicating that between February 2010 and November 2023 Debtor made only three payments of $1,587.59. The proof of claim further indicates that U.S. Bank has paid the taxes and insurance on the Property every year since 2011. Debtor never objected to the proof of claim or proffered any evidence to contradict the proof of claim.

### B. Debtor's Case History

#### a. The First Four Cases

A brief review of Debtor's case history and the numerous proofs of claim filed by U.S. Bank and its predecessor reveals that the arrearage on the Secured Claim was substantial in Debtor's first bankruptcy case in 2012 and has only grown since then. In Debtor's first case, case number 12-66796-wlh, Debtor proposed a plan estimating a $48,000.00 arrearage, and U.S. Bank's predecessor filed a proof of claim

7

asserting a payoff balance of $232,935.43 and an arrearage of $53,039.66. The case was dismissed within five months for failure to fund the plan.

In Debtor's second case, case number 13-54690-wlh, Debtor's confirmed plan estimated an arrearage of $65,640. The case was dismissed two months after confirmation. Debtor's third case, case no. 17-52284-jrs, was a chapter 7 case dismissed within 2 months for failure to pay the filing fee, but U.S. Bank filed a motion for relief from stay asserting a payoff balance of $310,254.50 and an arrearage over $120,000.

In Debtor's fourth case, 18-59230-jrs, Debtor scheduled the Secured Claim in the amount of $335,595 without marking it as disputed, contingent, or unliquidated. This scheduled amount suggests an arrearage of no less than $140,000 based on the original principal balance of $195,200.00. Debtor's plan in the fourth case inexplicably proposed to treat the Secured Claim as a fully unsecured claim, but Debtor voluntarily dismissed the fourth case just over a month after filing it.

In these first four cases a clear pattern emerged: the arrearage grew substantially year after year, Debtor filed multiple cases the day before "foreclosure Tuesday"[5] but failed to prosecute the cases, and the cases were dismissed shortly after being filed. Debtor never objected to any proof of claim filed on the Secured Claim, never scheduled the Secured Claim as contingent, unliquidated, or disputed,

---

[5] In Georgia, pursuant to O.C.G.A. § 9-13-161, all foreclosures occur on the first Tuesday of the month, and Debtor filed each of his seven cases on the Monday before a foreclosure Tuesday.

and never filed any pleading or evidence disputing the amounts asserted by U.S. Bank.

### b. The Fifth Case

Debtor's fifth case, case number 19-65557-jrs, followed the same pattern. Kakol was not counsel in the fifth case, but Kakol asserts that he studied the record in the fifth case "in depth" and relied significantly on positions taken by Debtor's counsel in the fifth case when he formulated the proposed arrearage of $21,000.00 in the Debtor's sixth and seventh cases.

In the fifth case, also filed the Monday before foreclosure Tuesday, Debtor scheduled the Secured Claim in the amount of $359,643, again without marking it disputed, contingent, or unliquidated. This amount tracks closely with the total balance asserted by U.S. Bank in its proof of claim in that case: $364,425.14. U.S. Bank asserted an arrearage of $210,376 and included a loan history showing Debtor had not made a payment since February of 2010[6] and that U.S. Bank paid property taxes and insurance every year beginning in 2011.

Debtor filed two plans in the fifth case. Neither plan tracked closely with U.S. Bank's asserted arrearage of $210,376. The first plan proposed to cramdown the Secured Claim to $15,000.00, and U.S. Bank objected to the treatment as improper, noting that the Secured Claim may not be modified pursuant to 11 U.S.C. § 1322(b)(2) because it is secured by the Debtor's primary residence. Debtor then filed an amended

---

[6] Debtor's three loan payments referenced above were all paid in late 2019 or early 2020 and came after U.S. Bank filed its proof of claim in the fifth case.

plan which treated the Secured Claim as fully secured but proposed an estimated arrearage of $0.00 and proposed payment of $0.00 on the arrearage. The fifth case was dismissed just over three months after being filed and a mere two weeks after the amended plan was filed due to Debtor's failure to make plan payments.

## C. <u>The Sixth Case</u>

Nearly four years later, Debtor filed his sixth case, case number 23-54104-jwc, with Kakol as his new counsel. Kakol filled out the Debtor's schedules, plan, and other documents and signed the plan. Schedule D estimated the Property value at $362,200.00, and Debtor scheduled the Secured Claim in the amount of $364,425.14 without listing it as contingent, unliquidated, or disputed. The scheduled value for the Property and the scheduled Secured Claim amount indicated Debtor held no equity in the Property. Debtor scheduled $4,000.00 in gross income per month, monthly expenses of $3,600, and monthly net income of $400.00. The plan proposed monthly payments of $400.00 with a 36-month applicable commitment period. The plan estimated the arrearage on the Secured Claim at $21,000.00 and proposed a monthly payment on the arrearage of $50.00 at 0% interest.

U.S. Bank filed a proof of claim asserting a total claim of $417,057.28 and prepetition arrears of $286,151.07—over 13 times more than the $21,000.00 proposed in Debtor's plan. U.S. Bank also objected to the amount of arrears proposed in the Plan and further contended that:

> Creditor does not believe Debtor can feasibly make ongoing post-[petition] payments and also cure the significantly high prepetition arrearage amount in this case. Debtor has missed 157 payments on this loan and the estimated prepetition arrears are $286,151.07. Debtor

proposes a monthly Trustee payment of $400 but due [to] the high prepetition arrearage amount, Debtor's monthly Trustee payment should be at least $5,000 a month. This is more than the Debtor's monthly income of $4,000. Also, [as] of June 1, 2023, Debtor's mortgage payment amount is $1,768.58, this is approximately $200 more than Debtor budgeted for on Schedule J. This presents ongoing feasibility concerns as the Debtor already has an extremely lean budget for ongoing expenses.

(Doc. No. 15). This objection was served on Debtor, Kakol, and the Kakol Firm. *Id.* Two weeks later, the Court denied confirmation of Debtor's plan and dismissed the case for failure to fund the plan.

### D. Debtor's Current Case

Less than four months later, Kakol and the Kakol Firm filed Debtor's current case with a substantially similar petition and plan as the sixth case. One notable change appears on Debtor's Schedule D reflecting an increase in the Secured Claim from $364,425.14 to $417,057.28. Again, Debtor did not schedule the Secured Claim as contingent, unliquidated, or disputed, and the scheduled amount matches exactly U.S. Bank's proof of claim in the sixth case. Debtor's schedules again show no equity in the Property, $4,000.00 monthly gross income, $3,600 monthly expenses, and $400.00 monthly net income.

Debtor's chapter 13 plan is virtually identical to the plan filed in the sixth case, proposing monthly payments of $400.00 with a 36-month applicable commitment period. The proposed treatment of the arrearage on the Secured Claim is the same: $21,000.00 paid $50.00 per month at 0% interest.

U.S. Bank again filed an objection to confirmation of Debtor's plan (Doc. No. 10) asserting the prepetition arrearage had grown to approximately $300,000.00,

which would require monthly payments of at least $5,000.00—an infeasible amount given that Debtor's gross monthly income is $4,000.00.

### E. **The Initial Hearing**

The Court held the first confirmation hearing in this case on January 23, 2024 (the "Initial Hearing"), where counsel for the Chapter 13 Trustee, counsel for U.S. Bank, and attorney Jack Spain ("Mr. Spain") as counsel for the Debtor appeared. During the Initial Hearing, counsel for the Chapter 13 Trustee and counsel for U.S. Bank raised issues regarding the plan, the infeasibility of the plan, and issues regarding the substantial arrearage on the Secured Claim. Both counsel for the Chapter 13 Trustee and counsel for U.S. Bank orally requested dismissal of the case with a one-year bar on refiling.

In response, Mr. Spain stated that he had no legal basis to oppose dismissal, but in the best interest of Debtor, he did not wish for the Court to grant dismissal with a bar on refiling. He was then asked by the Court for the legal basis for filing the case in the first place. Mr. Spain responded that the decision to file the case was made by Kakol, and that he was not privy to the reasoning behind why Kakol chose to file the case.

When Mr. Spain was asked by the Court why the prepetition arrearage of the U.S. Bank claim was listed as $21,000.00, Mr. Spain could not provide an explanation and relayed to the Court that he asked Kakol about the arrearage, but Kakol could not reconcile the disparity. Mr. Spain then asserted that U.S. Bank had not yet filed a proof of claim in the case, but U.S. Bank, in fact, filed its proof of claim eleven days

12

before the Initial Hearing. After considering all arguments from counsel, the Court continued the Initial Hearing so that appropriate written requests for a bar on refiling could be filed and served and to provide Debtor additional time to formulate a response. U.S. Bank and the United States Trustee then filed their Sanctions Motions, which requested both dismissal of the case with a bar on refiling and sanctions against Kakol and the Kakol Firm.

At the Final Hearing, after arguments from counsel for the Chapter 13 Trustee, the United States Trustee, and U.S. Bank supporting dismissal and sanctions, Kakol began his response by stating that no abuse occurred here but "just very aggressive lawyering on behalf of the Debtor." Kakol described his actions in preparing to file both the sixth case and the current case and how he arrived at the prepetition arrearage estimate of $21,000.00 proposed in both cases.

Before filing the sixth case, Kakol stated that he spoke with his client two to three days prior to a foreclosure scheduled for the beginning of May 2023. During their conversation, Debtor vehemently denied that he owed U.S. Bank a substantial arrearage and that he had been making payments. Debtor did not present any evidence to Kakol to support the denial or evidence of payments. Kakol told Debtor that until he was paid a fee in advance, he was unable to investigate the case.

When Kakol received approximately $1,000.00 in advance on the eve of the foreclosure, Kakol began to prepare the materials to be filed even though he still did not possess any evidence to support Debtor's position as to the estimated arrearage. He began by looking at the Debtor's prior cases in 2017, 2018, and most importantly,

2019.[7] Kakol also ran a credit report on Debtor, and he noted the Secured Claim did not appear on the report. Kakol believed the absence of U.S. Bank from the credit report meant that there was an issue with the amount of the claim.

Kakol believed that based on the filings provided in the prior cases and the credit report, he had evidence to support his client's position that the prepetition arrearage was minimal, as the chapter 13 plan filed in the fifth case in 2019 initially listed a prepetition arrearage of $15,000.00 followed by an amended plan proposing an arrearage of $0.00. Kakol contended that throughout the duration of the sixth case, he stressed to Debtor the importance of evidence of payments to support an objection to the Secured Claim. Kakol stated that Debtor advised that he was working on providing evidence of payments made and that he was working on a loan modification agreement with U.S. Bank. Kakol contended that he stressed with Debtor that he needed this information to continue Debtor's case. However, Kakol never received any evidence of payments, a loan modification, or anything else to support an objection to the Secured Claim, and the sixth case was dismissed for Debtor's failure to make plan payments.

Kakol did not hear from Debtor again until Friday, November 3, 2023—four days before another scheduled foreclosure. Kakol stated that they had a "heart-to-heart" discussion and that he told Debtor how he was not pleased with Debtor's conduct in the sixth case. Debtor begged him to help save his home and reassured

---

[7] Kakol reviewed the following cases of Debtor: (i) Case No. 17-52284-jrs; (ii) Case No. 18-59230-jrs; and (iii) Case No. 19-65557-jrs. He did not review the 2012 or 2013 cases.

him that he was close to finalizing a loan modification on the Property as well as close to having the necessary evidence for Kakol to file a future objection to the Secured Claim. In preparation for filing the current case, Kakol did not run a second credit report under the belief that not much changes in six months. Despite not receiving any evidence of payments, a loan modification, or other evidence supporting Debtor's contention that the Secured Claim was overstated, Kakol filed the current case.

As to how he calculated the prepetition arrearage of $21,000.00 for both cases, Kakol asked Debtor for authority to estimate the arrearage. Kakol believed that based on the chapter 13 plan filed in the fifth case, where the arrearage was estimated at $15,000.00, and the fact that Debtor and Debtor's prior counsel disputed the Secured Claim, estimating the arrearage at $21,000.00 was proper. In the fifth case, however, Debtor scheduled the Secured Claim in the amount of $359,643 and did not schedule the claim as contingent, unliquidated, or disputed. Nor did Debtor file an objection to U.S. Bank's claim in the case, which asserted a total claim of $364,425.14 and a prepetition arrearage of $210,376.10. Nor did Kakol contact Debtor's previous counsel to discuss the case or the positions taken in that case. When asked at the Final Hearing about whether Kakol considered the quality of previous counsel's work in the previous cases, Kakol acknowledged that he noticed mistakes in the previous cases.

Kakol contended that when he scheduled the Secured Claim at $417,057.28 in the current case, he reviewed the proofs of claim filed in the prior cases. When asked by the Court whether he was aware that the principal loan amount listed on the

15

promissory note was $195,200.00, Kakol could not recall and stated that he was solely focused on the arrearage claim. The Court then pointed out that if he had reviewed the proof of claim in the sixth case, he would have known that there had to have been a substantial arrearage given that the balance of the loan was $417,057.28 on a promissory note with an original principal amount of $195,200.00. Kakol argued that the lender might have made a mistake.

As to other issues with the chapter 13 plan in this case, Kakol admitted that there was very little difference between the sixth case and the current case. He also admitted that he intended for no disbursement to general unsecured creditors whereas the chapter 13 plan proposed a 100% distribution to general unsecured creditors. Beyond that, Kakol offered no further justifications for his legal representation of Debtor in this case other than his repeated insistence that he was simply trying to save his client's home on the eve of foreclosure and that he gives his clients the benefit of the doubt.

## IV.   CONCLUSIONS OF LAW

The proficient handling of a debtor's case and the accurate filing of truthful schedules and other court documents are essential to the practice of bankruptcy law. Kakol, as counsel for the Debtor, filed multiple cases using substantially similar forms and alleged facts while ignoring uncontradicted claim information filed in prior cases. In doing so, Kakol failed to satisfy basic obligations to perform a reasonable inquiry and obtain readily available information to ensure the accuracy of verified papers filed in this case. His actions in filing this case were not made in good faith

16

after a reasonable inquiry into the facts. He also used appearance counsel who was unprepared to represent the Debtor in hearings before the Court. Kakol's actions facilitated a gross abuse of the bankruptcy process and harmed creditors warranting both disgorgement of fees as well as the imposition of sanctions.[8]

## A. __Rule 9011 Violations__

Federal Rule of Bankruptcy Procedure 9011(a) requires that "[e]very petition, pleading, written motion, and other paper . . . shall be signed by at least one attorney of record in the attorney's individual name." In doing so, an attorney is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,"

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). "The purpose of Rule 9011 is to deter litigation abuse and unnecessary filings." *In re Addon Corp.*, 231 B.R. 385, 387 (Bankr. N.D. Ga. 1999).

---

[8] In the Sanctions Motions, U.S. Bank and the United States Trustee request disgorgement of fees and sanctions against Kakol and the Kakol Firm under various rules, including, but not limited to: (i) 11 U.S.C. §§ 105(a) and 329, (ii) Fed. R. Bankr. P. 2017 and 9011, and (iii) Georgia Rule of Professional Conduct 5.1 (Doc. Nos. 18-20).

Sanctions are warranted under this rule when "(1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995).

When a motion for sanctions under Rule 9011 is presented before the Court, it must inquire whether the attorney would have "been aware that it was frivolous if [he] had conducted a reasonable inquiry." *In re Mroz*, 65 F.3d at 1573 (citing *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995)). "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563 (11th Cir. 1992). The sanction to be imposed is within the discretion of the court. *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987). "The purpose of sanctions is to deter abusive practices and to compensate the offended party." *In re Addon Corp.*, 231 B.R. at 389 (quoting *In re AT Engineering, Inc.*, 142 B.R. 990, 992 (Bankr. M.D. Fla. 1992)).

Kakol's conduct in the preparation and filing of the current case violated Rule 9011. Kakol filed this case and the proposed chapter 13 plan without any factual evidence or legal basis to support the Debtor's assertion that the outstanding arrearage owed on the Secured Claim was $21,000.00, or that the Debtor could confirm a feasible plan in this case.

Whether it was reasonable for Kakol to calculate the arrearage at $21,000 and file the sixth is questionable, at best, but after the sixth case there is no room for doubt that Kakol knew or should have known that the arrearage claim was

substantially greater than his client was insisting. Kakol represented Debtor in the sixth case and received service of both the chapter 13 trustee's and U.S. Bank's objections to confirmation of the proposed chapter 13 plan. As counsel of record in the sixth case, Kakol was aware of the issues raised relating to the prepetition arrearage on the Secured Claim, and he was on notice that the arrearage was substantially greater than $21,000.00. Further, Kakol possessed knowledge of the amount of Secured Claim as he scheduled it in the undisputed amount of $417,057.28, the exact amount listed in U.S. Bank's proof of claim in the sixth case. Kakol was also aware of the fact that his client promised him evidence of payments in the sixth case and never delivered on that promise prior to dismissal of that case.

If Kakol had made a reasonable inquiry into the Secured Claim of U.S. Bank, he would have known that listing the prepetition arrearage at $21,000.00 was without any factual or legal basis. Kakol also knew that any substantial arrearage claim would render Debtor's chapter 13 plan unworkable given the Debtor's disclosed disposable monthly income of $400.00, a fact pointed out in the sixth case by U.S. Bank. Kakol's estimate of $21,000.00 was merely an approximation based on the prepetition arrearage listed in Debtor's fifth case, without any independent investigation as to its veracity. A cursory review of the fifth case, however, shows that the treatment of the Secured Claim proposed in that case was wholly unsupportable. When asked by the Court whether Kakol was aware of the original principal amount of the loan, an amount disclosed in the proof of claim filed in the fifth and sixth cases, Kakol could not recall and claimed he was focused solely on the prepetition arrearage.

The Court is left to wonder how an attorney intently focused on a prepetition arrearage claim could gain any clarity of vision without knowing the original principal balance of the loan or the payment history.  Had he bothered to look at the proofs of claim filed in the prior cases—which clearly showed the original principal amount of the loan and a history of only three payments since 2008—an accurate picture of the Debtor's financial situation would have been brought into focus.[9] As Debtor's counsel in the sixth case, Kakol was either aware of such facts or blindly ignored such in the name of "aggressive lawyering."

Regardless, no good faith basis existed for listing U.S. Bank's arrearage claim at $21,000.00 in the seventh case, and no good faith basis existed for proposing a plan that sought to minimize the Secured Claim. At a minimum, the information revealed from the prior cases put Kakol on notice that he needed more from his client than promises of evidence to come, particularly given his client's failure to produce such evidence at any point in the sixth case. Kakol failed to conduct a reasonable inquiry into the prepetition arrearage claim of U.S. Bank and listed the arrearage at $21,000.00 without any legal or factual basis in violation of Rule 9011. In doing so, he aided Debtor in his efforts to file a seventh bankruptcy case without any real prospects of rehabilitation.

---

[9] Motion for Relief from Stay, Doc. No. 13, Case No. 17-52284-jrs (Bankr. N.D. Ga. Feb. 24, 2017); Final Report and Accounting, Doc. No. 20, Case No. 18-59230-jrs (Bankr. N.D. Ga. July 25, 2018); Final Report and Accounting, Doc. No. 21, Case No. 19-65557-jrs (Bankr. N.D. Ga. Mar. 18, 2020).

**B. <u>Georgia Rules of Professional Conduct Violations</u>**

A second and related issue involves Kakol and the Kakol Firm's use of unprepared associates or appearance counsel in violation of the Georgia Rules of Professional Conduct. Pursuant to BLR 9010-3, the Georgia Rules of Professional Conduct apply in all proceedings in the bankruptcy court. Kakol in his capacity as supervisory counsel violated Georgia Rule of Professional Conduct 5.1.

Supervisory counsel violates Rule 5.1 when they fail to ensure that appearance counsel is adequately prepared to address questions at hearings. When appearance counsel is unprepared and unable to address questions at hearings, it leaves debtors "with counsel in name only." *In re Schatz*, 601 B.R. 864, 870 (Bankr. D. Conn. 2019) (quoting *In re D'Arata*, 587 B.R. 819, 825 (Bankr. S.D.N.Y. 2018)); *see also In re Bennett*, Case Nos. 17-31697, 16-30663, 15-30473, 2019 WL 3805975, at *8 (Bankr. D. Conn. Aug. 13, 2019). "The practice of undisclosed 'appearance attorneys' creates problems—other parties (and the court) are sandbagged, and the Debtor, trustee, other creditors, and counsel cannot readily communicate regarding scheduling or substance." *In re Jacobson*, 402 B.R. 359, 365 (Bankr. W.D. Wash. 2009).

One of the largest issues surrounding use of appearance counsel is the potential lack of accountability as:

> Appearance attorneys are rarely listed as an attorney of record or co-counsel in a case and this can raise questions as to the legitimacy of their representation of debtors and their authority to speak for, or make admissions on behalf of, the debtor. While many appearance attorneys are competent lawyers, others are "[m]ere drones who give inadequate representation." If a court cannot determine who has the authority to speak on behalf of a debtor, a sizeable and unnecessary roadblock is thrown up in front of the bankruptcy process. The court overseeing a

bankruptcy case must know who speaks for a debtor and whom it can
hold accountable for any improprieties in the process.

*In re Bradley*, 495 B.R. 747, 804 (Bankr. S.D. Tex. 2013) (citations omitted). When
appearance counsel provides inadequate representation to debtors, the use of such
counsel harms the bankruptcy system and negatively impacts the Court.

At the Initial Hearing, Mr. Spain appeared on behalf of the Debtor but was
uninformed, unprepared, and unable to answer any of the Court's questions relating
to the issues in this case. When asked by the Court for the legal basis of filing the
case, Mr. Spain stated that he was not privy to that information. Further, when Mr.
Spain was asked to explain the $21,000.00 prepetition arrearage on the Secured
Claim, he relayed that he had asked Kakol about the disparity but neither of them
could reconcile the reasoning at that time. Unable to respond to the Court's questions,
Mr. Spain was not adequately prepared or informed of the issues surrounding the
Debtor's case, effectively leaving the Debtor unrepresented. Kakol and the Kakol
Firm, in failing to ensure that appearance counsel was sufficiently equipped to
answer questions at the Initial Hearing, violated Rule 5.1. As a result, Kakol and the
Kakol Firm may be sanctioned for such conduct.

"Federal courts, including bankruptcy courts, have the inherent power to
impose sanctions on parties and lawyers." *In re Evergreen Security, Ltd.*, 570 F.3d
1257, 1263 (11th Cir. 2009) (quoting *In re Walker*, 532 F.3d 1304, 1309 (11th Cir.
2008)); *see also In re Mroz*, 65 F.3d 1567, 1576 (11th Cir.1995). "This power is derived
from the court's need to manage [its] own affairs so as to achieve the orderly and
expeditious disposition of cases." *In re Evergreen Security*, 570 F.3d at 1263 (quoting

*In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)). Among other things, "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991). "Bankruptcy Courts also have authority under § 105(a) 'to regulate those who appear before it, and what they say and do during that representation.'" *In re New River Dry Dock, Inc.*, No. 06–13274–BKC–JKO, 2011 WL 4382023, at *2 (Bankr. S.D. Fla. Sept. 20, 2011), *aff'd sub nom. In re Gleason*, No. 11–62406–CIV, 2012 WL 463924 (S.D. Fla. Feb. 13, 2012), *aff'd,* 492 F. App'x 86 (11th Cir. 2012). "The Court has inherent and statutory authority to control admission to its bar and to discipline attorneys practicing before the Court" independent of the State Bar of Georgia's authority and disciplinary proceedings to sanction its members for misconduct. *Id.* at *3.

As to sanctions, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 105(a) grants the Court authority to impose sanctions against attorneys to prevent an abuse of the bankruptcy process. *In re Matus*, 303 B.R. 660, 683 (Bankr. N.D. Ga. 2004). Section 105 authorizes the Court to issue any type of order, whether injunctive, compensative, or punitive, if it is necessary or appropriate to carry out provisions of the Bankruptcy Code. *In re Workman*, 392 B.R. 189, 196 (Bankr. D.S.C. 2007) (*citing Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1554 (11th Cir. 1996)). "The appropriate sanction is one 'intended to ensure future compliance with the law and the Bankruptcy Court's standards guiding bankruptcy

23

proceedings.'" *In re T.H.*, 529 B.R. 112, 146 (Bankr. E.D.Va. 2015) (citing *In re Parker*, No. 3:14-cv-241, 2014 WL 4809844, at *6 (E.D.Va. Sept. 26, 2014)). In determining the appropriate sanction, the Court should consider the extent of the sanction as it compares to the attorney's conduct in the case. *In re Whitley*, 737 F.3d 980, 987–88 (5th Cir. 2013).

Kakol and the Kakol Firm violated Rule 5.1 of the Georgia Rules of Professional Conduct by not ensuring that Mr. Spain was adequately prepared to represent the Debtor at a contested hearing before the Court. Mr. Spain's lack of preparedness not only negatively impacted the Debtor but slowed and frustrated the bankruptcy process as the case had to be continued as a result of Debtor's counsel's inability to answer basic questions posed by the Court. To deter this conduct in the future, in addition to the other sanctions issued below, Kakol and the Kakol Firm will be subject to a further sanction of up to $500.00 for each instance in the future in which appearance counsel or any attorney with the Kakol firm is unprepared or unable to properly handle a debtor's business before the Court.

## C. <u>Conclusion</u>

Pursuant to the Court's inherent powers and its authority under 11 U.S.C. § 105 and Rule 9011, the Court finds it appropriate to sanction Kakol and the Kakol Firm to ensure that similar conduct is not repeated. U.S. Bank asked for reimbursement of its counsel's fees in this case for having to appear in and prosecute objections and motions in response to a frivolous bankruptcy petition, and the Court finds such request warranted. Kakol offered no objection to the requested fees, and

24

the Court finds that the fees requested by U.S. Bank are reasonable and appropriate under the circumstances of this case and should be repaid by Kakol and the Kakol Firm to deter similar conduct in the future. The Court further finds that Kakol and the Kakol Firm should be required to disgorge to U.S. Bank any fees received by them in connection with the current case as no good faith basis existed for prosecuting this case. The Court believes any return of fees to the Debtor in this case is inappropriate in light of his conduct addressed by a separate order of this Court (Doc. No. 29). Accordingly,

**IT IS ORDERED** that Kakol and the Kakol Firm shall disgorge to U.S. Bank all fees received in connection with this case, including the amount of $1,037.00 paid prior to filing this case and any other fees paid post-petition in connection with this matter. If the Chapter 13 Trustee has any funds on hand that are payable to Kakol or the Kakol Firm, she is directed to pay such funds to U.S. Bank.

**IT IS FURTHER ORDERED** that Kakol and the Kakol Firm, jointly and severally, shall reimburse U.S. Bank for all attorney's fees and costs incurred in this case in the total amount of $5,090.00.

**IT IS FURTHER ORDERED** that Kakol and the Kakol Firm may pay all amounts owed to U.S. Bank pursuant to this Order pursuant to the following schedule: an initial payment of $500.00 must be paid to U.S. Bank no later than September 1, 2024, and the remaining balance shall be paid in timely monthly installments of $500.00 beginning on October 1, 2024 and each month thereafter until paid in full. In the event Kakol or the Kakol Firm fails to timely pay any amounts

ordered herein, U.S. Bank shall be entitled to an immediately enforceable judgment for any unpaid balance upon request.

**IT IS FURTHER ORDERED** that Kakol shall attend and obtain credit for fifteen (15) hours of continuing legal education focused on consumer bankruptcy topics, with at least three (3) of those hours focused on professionalism and/or ethics in bankruptcy. Kakol must complete these fifteen (15) hours of continuing legal education in the six (6) months following entry of this Order. Kakol must file a certificate of compliance with the Clerk of Court certifying under oath his compliance with the continuing legal education requirements required by this Order.

**IT IS FURTHER ORDERED** that Kakol and the Kakol Firm are prohibited from using attorneys, associates or appearance counsel that have failed to review the pleadings filed in a case, or who are otherwise not adequately prepared to represent clients' interests before the Court. Should Kakol and/or the Kakol Firm fail to comply with the terms of this Order, they shall be subject to a further sanction of up to $500.00 for each instance in the future in which Kakol, attorneys for the Kakol Firm, or appearance counsel appearing on behalf of the Kakol Firm are unprepared or unable to properly handle a debtor's business before the Court.

The Clerk is directed to serve a copy of this Order on the Debtor, Mr. Stanley J. Kakol, Jr., the Kakol Firm, Mr. Jack Spain, the United States Trustee, U.S. Bank National Association, and the Chapter 13 Trustee.

**END OF DOCUMENT**